## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Elizabeth Negron Roque, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| Aldridge Pite Haan, LLP, | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Elizabeth Negron Roque ("Elizabeth"), is a natural person who resided in Lawrenceville, Georgia, at all times relevant to this action.

2. Defendant, Aldridge Pite Haan, LLP ("APH"), is a Georgia limited liability partnership that maintained its principal place of business in Atlanta, Georgia, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

1

## ARTICLE III STANDING

5.   Elizabeth has Article III standing to bring her FDCPA claims against APH because APH's communications in attempt to collect an alleged debt constitute an unwanted intrusion upon her solitude, seclusion, and peace and quiet, which are common law analogues to the FDCPA violations asserted below. See *Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F. Supp. 3d 700, 709 (N.D. Tex. 2022) (receiving an unwanted letter "has a 'close relationship' to the type of harm protected by the common law tort of intrusion upon seclusion (protecting against intrusion into private solitude)) (citing *TransUnion LLC v. Christinarez*, —— U.S. ——, 141 S. Ct. 2190, 2204 (2021)) (also citing *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy.")).

6.   APH's collection efforts with respect to the alleged debt caused Elizabeth to suffer concrete and particularized harm, inter alia, because the FDCPA provides her with the legally protected right not to be misled about the legal status of a debt or treated unfairly with respect to any action for the collection of any consumer debt.

7.   Moreover, the emotional distress Elizabeth experienced is a sufficient concrete injury to establish Article III standing. See *Mayfield v. LTD Fin. Servs., L.P.*,

No. 4:20-CV-01966, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) (citing *Rideau v. Keller Indep. Sch. Dist.,* 819 F.3d 155, 169 (5th Cir. 2016) ("[E]motional harm satisfies the 'injury in fact' requirement of constitutional standing.")) (additional internal quotation marks omitted); see also *Smith v. Moss Law Firm, P.C.,* No. 18-2449, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020) ("legal costs, anxiety, and worry" caused by defendant's alleged FDCPA violation were concrete and particularized injuries for purposes of FDCPA claim).

8.   APH's attempts to collect an alleged debt from Elizabeth after she sent it notice to cease communications is the type of harassment and invasions of privacy that Congress sought to protect by enacting FDCPA.

9.   APH's attempts to collect an alleged debt after receiving notice to cease communication from a consumer clearly "disadvantages other debt collectors," who properly follow FDCPA. 15 U.S. Code § 1692(e) (Congressional findings and declaration of purpose).

## **STATEMENT OF FACTS**

10.   At all times relevant to this action, APH collected consumer debts.

11.   APH regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

12. APH is a "debt collector" that regularly collects consumer debts as defined by 15 U.S.C. §1692a(6).

13. As described, *infra*, APH contacted Elizabeth to collect a debt that was incurred primarily for personal, family, or household purposes.

14. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

15. Elizabeth is a "consumer" as defined by 15 U.S.C. § 1692a(3).

16. Prior to involvement by APH, Midland Credit Management ("MCM") attempted to collect an alleged debt from Elizabeth.

17. On October 2, 2023, Elizabeth mailed a letter to MCM requesting validation and disputing the alleged debt.

18. On October 13, 2023, MCM mailed Elizabeth a letter stating that it concluded its review and found its information accurate.

19. On November 8, 2023, MCM mailed a letter to Elizabeth threatening that it planned an attorney review and intended to file a lawsuit against her (the "Legal Threat Letter"). *See* Exhibit A.

20. On February 9, 2024, APH emailed Elizabeth in attempt to collect an alleged debt (the "Initial Collection Email") and Elizabeth quickly replied. *See* Exhibit B.

21. APH attempted to collect on behalf of its client, Midland Credit Management.

22. Elizabeth recognized APH as a law firm due to its letterhead, use of the name "APH Law", and its admission that it represented MCM.

23. Beyond a normal debt collector, Elizabeth was especially concerned at receiving a communication from a law firm such as APH in regards to an alleged debt that she disputed.

24. Elizabeth knew that a law firm's involvement meant likely legal consequences for her, as promised in the Legal Threat Letter.

25. APH's email to Elizabeth on behalf of its client, shortly after MCM threatened Elizabeth with an attorney review of her account and commencing legal action, showed her that MCM and APH coordinated the escalating threat against her.

26. Elizabeth responded promptly because she feared the power of a law firm against her.

27. Elizabeth responded to APH through the email address it provided to her.

28. APH's email falsely promised Elizabeth, "Email us at payments@aph-law.com to work with an agent to help put this matter behind you."

29. Elizabeth replied to payments@aph-law.com, "Please cease communicating with me at once!" *See* Exhibit B.

30. APH received Elizabeth's email at the address it provided to her.

31. On February 12, 2024, APH emailed Elizabeth to collect an alleged debt (the "First Email Post-C&D"). *See* Exhibit C.

32. Despite its receipt of Elizabeth's email and promise to "put this matter behind" her, APH continued to email Elizabeth to collect an alleged debt.

33. APH again misleadingly requested that Elizabeth email it "at payments@aph-law.com" in the First Email Post-C&D, similar to the Initial Collection Email.

34. On February 14, 2024, APH again emailed Elizabeth to collect an alleged debt (the "Second Email Post-C&D"). *See* Exhibit D.

35. APH frustrated, confused and worried Elizabeth with its Initial Email and its successive emails.

36. Moreover, APH's position as a law firm severely stressed Elizabeth because she was afraid how APH's legal expertise could be used against her.

37. APH unfairly and unconscionably caused Elizabeth to be intimidated, depressed and feel utterly powerless to do anything to stop APH from contacting her as her federally protected rights were ignored by a team of legal experts.

38. APH designed its email and used its letterhead with other textual indicators to show consumers, like Elizabeth, that it is a law firm.

39. Federal Courts have cautioned lawyers from using their law firm name in instances where the law firm is simply acting as a traditional debt collector. *Greco v. Trauner, Cohen Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

40. Law firms that act as traditional debt collectors are not permitted to use their law firm letterhead as a faux escalation point. *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002).

41. Receiving a communication from an attorney has a profound effect on debtors. A" debt collection letter on an attorney's letterhead conveys authority," and "[a]n unsophisticated consumer, getting a letter from an attorney, knows the price of poker has just gone up." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

42. Courts have found that attorneys may be held personally liable for the FDCPA. violations of their law firm. *See Kistner v. the Law Offices of Michael*, 518 F.3d 433 (6th Cir. 2008).

43. APH's representation of itself as a law firm in its emails to Elizabeth conveyed the false representation that APH engaged meaningful attorney involvement prior to sending Elizabeth the email.

44. Upon information and belief, despite its representations, APH's attorneys undertook no meaningful legal work prior to sending Initial Collection Email, the First Email Post-C&D, or the Second Email Post-C&D.

45. APH's actions and intimidations showed Elizabeth that her efforts as a lay person would be hopeless with a law firm like APH, forcing her into a corner.

46. Without other recourse, Elizabeth contacted present counsel for the present action.

47. Despite APH's involvement as a law firm and representation of Elizabeth's alleged debt as legally valid, it has not taken any legal action against her.

48. APH did not file suit against Elizabeth for the alleged debt because APH did not have meaningful engagement or review of her account before sending the letters.

49. Because APH continued emailing Elizabeth after receiving her "cease communication" email, it is clear that no attorney reviewed her response to its requested address in a timely fashion.

50. Additionally, APH's policies and procedures appear to violate FDCPA.

51. APH fails to properly process consumers' enactments of their rights in written form in a reasonable, timely fashion.

52. Because APH fails to properly maintain the inbox of the email address where it requests consumer communication, APH continues to contact consumers after consumers notify APH in writing.

53. Because APH fails to properly process consumers' notifications in writing, APH continues to contact consumers after consumers notify APH in writing.

54. It is APH's policy and procedure to send intimidating and threatening communications to consumers on law firm letterhead, either by itself or in coordination with its clients, without meaningful involvement of attorneys.

55. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. See *Anchondo v. Anderson, Crenshaw &Associates, L.L.C.*, 256 F.R.D. 661, 671 (D.N.M. 2009); see also *Kromelbein v. Envision Payment Sol., Inc.,* 2013 WL 3947109, *7 (M.D. Penn. Aug. ,1 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); citing *Edwards v. Niagara Credit Sol., Inc.,* 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

## <u>COUNT ONE</u>

### Violation of the Fair Debt Collection Practices Act

56. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 55 above as if fully set forth herein.

57. Defendant violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

58. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 55 above as if fully set forth herein.

59. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

60. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

61. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

62. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

63. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 55 above as if fully set forth herein.

64. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA.  *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586

F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

65. Defendant's policies and procedures, as described, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

66. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

67. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

68. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 55 above as if fully set forth herein.

69. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## <u>COUNT FIVE</u>

### **Violation of the Fair Debt Collection Practices Act**

70. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 55 above as if fully set forth herein.

71. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## <u>JURY DEMAND</u>

72. Plaintiff demands a trial by jury.

## <u>PRAYER FOR RELIEF</u>

73. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,


Date: May 14, 2024                     By:   /s/ Charles M. Clapp

*Of Counsel*
Charles M. Clapp, Esq.
Georgia Bar No. 101089
Hyslip Legal, LLC
5 Concourse Parkway NE, Suite 3000
Atlanta, GA 30328
Phone: 404-585-0040
Facsimile: 404-393-8893
charles@lawcmc.com

*Attorney for Plaintiff*